USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/11/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT CROCI, AS ADMINISTRATOR OF THE ESTATE OF JOANN C. CROCI, DECEASED,

       Plaintiff,

 -against-

ZOLL MEDICAL CORPORATION AND ZOLL SERVICES LLC,

       Defendants.

No. 24-CV-02137-NSR

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Robert Croci, as Administrator of the Estate of Joann C. Croci, Deceased, ("Plaintiff") commenced this action against Defendants Zoll Medical Corporation and Zoll Services, LLC (the "Defendants") asserting four causes of action: (1) negligence, (2) strict products liability, (3) breach of warranty, and (4) pecuniary losses to the estate. Presently before the Court is the Defendants' motion to dismiss the entirety of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion is GRANTED.

## FACTUAL BACKGROUND

### I. Facts of the Case

The following facts are derived from the Complaint ("Compl.") and are accepted as true and construed in the light most favorable to the Plaintiff. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Defendants manufactured and distributed the Zoll Life Vest ("LifeVest"), a wearable defibrillator, Model 10A1004-B04, and its accessories. (Compl. ¶ 10.) Physicians particularly prescribe LifeVest to patients who are at risk of sudden cardiac death. (Memorandum of Law in Support of Defendants' Motion to Dismiss ("MoL") at 2.) LifeVest is worn externally and continuously monitors the wearer's heart rate and rhythm. (*Id.*) The device incorporates built-in hardware and software to detect

1

potentially life-threatening fast heart rhythms, specifically "ventricular tachycardia and ventricular fibrillation." (*Id.*) If necessary, LifeVest delivers a therapeutic shock to restore normal cardiac rhythm. (*Id.*) "Since its approval by the U.S. Food and Drug Administration ("FDA") in 2001, the LifeVest has been used by thousands of patients worldwide." (*Id.*)

On March 16, 2023, Plaintiff received a LifeVest and its accompanying components following a heart attack. (Compl. ¶ 13.) Several days later, the decedent contacted the Defendants' service line to report that the device was issuing alerts and was instructed to clean the sensors. (*Id.* ¶ 17.) Approximately two weeks before her death, the decedent again contacted the Defendants' service line to report that the device was displaying a red light and emitting sound alerts. (*Id.* ¶ 18.) Three days after that call, a representative from the Defendants visited her home to "purportedly desensitize the device." (*Id.*) On April 8, 2023, the decedent suffered a cardiac arrest and tragically passed away. (*Id.* ¶ 19.)

Plaintiff alleges that the decedent's death was the direct result of the LifeVest's failure to function as intended. (*Id.* ¶ 23.) Specifically alleging that the LifeVest had "failed to detect life threatening rapid heart rhythms and/or failed to automatically deliver a treatment shock to save the decedent's life." (*Id.* ¶¶ 15, 20.)  Plaintiff alleges, among other things, that Defendants negligently designed, assembled, labeled, inspected, adjusted, and serviced the LifeVest, failed to provide sufficient warnings and instructions, and inadequately trained or supervised their staff. (*See id.* ¶ 24) (listing alleged acts and omissions by Defendants). Based on these allegations, Plaintiff brings this action against Defendants, asserting claims under New York state law for: (1) negligence, (2) strict products liability, (3) breach of warranty, and (4) pecuniary losses to the estate.

## II. Class III Medical Devices

Defendants' LifeVest is classified as a Class III medical device by the FDA under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301. (MoL at 3.) Class III medical devices are those used "in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health" and those that "present[ ] a potential unreasonable risk of illness or injury." 21 U.S.C. § 360c(a)(1)(c). Class III medical devices are subject to a rigorous process of federal review for safety and effectiveness, known as "premarket approval," which serves as the basis for the preemption provision at issue in this case. *See id.* § 360e; *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 317–20 (2008) (describing the rigorous process for premarket approval).

A manufacturer's obligation does not end once the FDA grants premarket approval. For example, "the [Medical Device Amendment of 1976] forbids a manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Id.* at 319 (citing 21 U.S.C. § 360e(d)(6)(A)(i)). Furthermore, "the manufacturer is required to report any information that reasonably suggests that the device (1) may have caused or contributed to a death or serious injury or (2) has malfunctioned and that any recurring malfunction 'would be likely to cause or contribute to a death or serious injury.'" *Stengel v. Medtronic, Inc.,* 704 F.3d 1224, 1227 (9th Cir. 2013) (quoting 21 C.F.R. § 803.50(a)). If, at any time, the FDA determines that a device is unsafe or ineffective based on new information, it may withdraw its premarket approval for the device. *Riegel,* 552 U.S. at 319–20 (citing 21 U.S.C. § 360e(e)(1)).

**PROCEDURAL BACKGROUND**

Plaintiff filed this action in New York State Supreme Court, Orange County, on or about February 2024. Defendants removed the action to federal court on March 21, 2024. (ECF No. 1.) By letter dated March 28, 2024, Plaintiff sought leave of Court to file a motion to remand the action back to state

court, which was granted. (ECF No. 4.) On October 24, 2024, following the denial of Plaintiff's Motion to Remand, Defendants sought leave to file a motion to dismiss, which the Court subsequently granted. (ECF. Nos. 25–26, 28.) Defendants filed their motion to dismiss on February 24, 2025 (ECF No. 29, "the Motion"), along with a memorandum of law in support. (ECF No. 30, "MoL".) Plaintiff subsequently filed a memorandum of law in opposition to the Motion. (ECF No. 33, "Opp.") Defendants, in response, filed a reply memorandum of law. (ECF No. 31, "Reply.") Presently before the Court is the Defendants' Motion.

## LEGAL STANDARD

### I. Motion to Dismiss

Fed. R. Civ. P. 8(a)(2) requires that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12 (b)(6) allows a defendant to seek dismissal of a claim where the complaint fails to state a claim upon which relief can be granted. In deciding a Rule 12 (b)(6) motion, the Court limits its review of "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken." *Hu v. City of New York,* 927 F.3d 81, 88 (2d Cir. 2019) (quoting *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 664. A claim is facially plausible when the plaintiff pleads facts sufficient to allow a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Instead, the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

While courts are obligated to accept all factual allegations in the complaint as true, they are "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678.

"There are no special pleading requirements for product liability claims in general, or for Class III medical device claims in particular." *Bausch v. Stryker Corp.*, 630 F.3d 546, 557 (7th Cir. 2010). "District courts must keep in mind that much of the product-specific information about manufacturing needed to investigate such a claim fully is kept confidential by federal law." *Id.* "The federal standard of notice pleading applies, so long as the plaintiff alleges facts sufficient to meet the 'plausibility' standard." *Id.*

## II. Preemption

Preemption is "a matter of statutory interpretation." *Cantero v. Bank of Am., N.A.*, 49 F.4th 121, 130 (2d Cir. 2022). The "ultimate touchstone" of any preemption analysis is the "purpose of Congress." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). Courts generally recognize three categories of preemption: (1) express preemption, where Congress explicitly displaces state law; (2) field preemption, where federal regulation is so pervasive it occupies the entire field; and (3) conflict preemption, where state law conflicts with federal law, either by making compliance impossible or frustrating federal objectives. *See Buono v. Tyco Fire Prods.*, 78 F.4th 490, 495 (2d Cir. 2023).

Where a statute contains an express preemption clause, courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011). The Supreme Court has emphasized that "no presumption against pre-emption" applies when interpreting an express preemption provision. *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016). The existence of an express preemption clause does not end the inquiry. *See Riegel,* 552 U.S. at 334 (Ginsburg, J., dissenting). "A pre-emption

clause tells us that Congress intended to supersede or modify state law to some extent. In the absence of legislative precision, however, courts must determine the substance and scope of Congress' displacement of state law." *Id.* at 334–35.

## DISCUSSION

The Plaintiff alleges four causes of action under New York law: (1) strict liability; (2) negligence; (3) breach of implied warranty; and (4) pecuniary losses to the estate. In opposition, Defendants contend that Plaintiff's claims should be dismissed on two grounds: (1) they are preempted by federal law; and (2) the claims do not meet the minimum pleading standards, therefore they must be dismissed pursuant to Rule 12(b)(6). (*See* MoL; Reply.) The Court will first consider the justiciability of Plaintiff's claims, considering the express preemption clause applicable to LifeVest.

### I. Medical Device Amendments of 1976

At issue here is an express preemption clause contained in the Medical Device Amendments of 1976 ("MDA"). In enacting the MDA, Congress sought to address the growing complexity of medical devices and the inadequacy of state tort law to regulate their risks. *See Riegel*, 552 U.S. at 315–316. The MDA established a comprehensive federal framework to ensure the safety and effectiveness of medical devices. *Id.* at 316. To ensure uniformity in device regulation, Congress included an express preemption clause for product liability claims against manufacturers of Class III medical devices:

> [N]o State . . . may establish or continue in effect with respect to a device intended for human use any requirement—(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

The preemption clause is not absolute. The Supreme Court clarified that § 360k(a) "protects a medical device manufacturer from liability to the extent that it has *complied* with federal law, but it does not extend protection from liability where the claim is based on a *violation* of federal law." *Bausch,* 630 F.3d at 552. Put differently, "where state law is parallel to federal law, section 360k does not preempt the claim." *Id.* When asserting a parallel claim, "[t]he Supreme Court instructs that a state law claim must be 'identical' to an existing federal requirement for such a claim to survive § 360k preemption." *Otis-Wisher v. Medtronic, Inc.,* 616 F. App'x 433, 434 (2d Cir. 2015) (citing *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 495 (1996)). Additionally, claims against manufacturers must be based on traditional state tort law rather than existing "solely from the violation of FDCA requirements," as claims seeking to enforce federal standards are impliedly preempted. *Buckman Co. v. Plaintiff's Legal Comm.,* 531 U.S. 341, 353–354 (2001).

Accordingly, to survive preemption, a plaintiff must allege conduct that violates both federal law and state-law duty. *See In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010). A valid parallel claim, thus, must be based on a state law that mirrors a federal law without imposing any additional obligations. *Id.* It is neither based solely on federal law nor does it create new duties beyond those imposed by federal law. *Id.*

    **II.**    ***Riegel* Framework**

The Supreme Court's decision in *Riegel*, 552 U.S. 312, controls for assessing when state-law claims are preempted under § 360k. A claim is preempted if two conditions are met: (1) the medical device must have received PMA from the FDA, making it subject to device-specific federal requirements; and (2) the plaintiff's state-law claims must impose requirements that are "different from, or in addition to" those imposed by federal law that relate to the safety or

effectiveness of the device. *Id.* at 321–22. However, *Riegel* also recognized that § 360k does not prevent states from providing a damages remedy for claims based on conduct that violates federal requirements. *Id.* at 330. Therefore, state law claims alleging a violation of the FDA's regulations without seeking to impose additional or different obligations may proceed. *Id.* (citing *Lohr*, 518 U.S. at 495).

In this case, the first prong of *Riegel* is satisfied. It is undisputed that LifeVest is a Class III medical device subject to device-specific federal requirements. Defendants have provided FDA records confirming that LifeVest is a Class III medical device that has received a PMA. (MoL at 4.) Courts routinely take judicial notice of FDA records at the motion to dismiss stage. *See Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 401 n.2 (S.D.N.Y. 2013) ("For the purpose of resolving the present motion [to dismiss], the Court takes judicial notice of public records contained on the FDA website."); *Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 246 n.2 (S.D.N.Y. 2013) ("The Court takes judicial notice of [the FDA's premarket approval], based on FDA public records available" on its website.). Additionally, Plaintiff does not dispute that LifeVest is a Class III device that received PMA approval, and, thereby, subject to specific federal requirements. (*See* Opp. at 2.) Therefore, the first prong of *Rigel* is satisfied. The analysis thus turns to the second prong of *Riegel*—whether the Plaintiff's claims impose state requirements that diverge from federal requirements.

### III.     Parallel Claims

Before turning to the second prong of *Riegel*, the Court examines the appropriate pleading standard governing parallel claims. Courts are divided on this issue. The division concerns whether a plaintiff must base their violations of federal law on device-specific PMA requirements, or whether violations of the FDA's industry-wide Current Good Manufacturing Practices ("CGMPs") are sufficient. *Compare In re Medtronic Inc.*, 623 F.3d 1200 (8th Cir.

2010) (requiring a device-specific federal requirement approved through the PMA process), *and Caplinger, Inc.*, 784 F.3d at 1340–41 (10th Cir. 2015) (finding that general allegations of CGMP violations fail to state a parallel claim, emphasizing the need for a specific, parallel federal duty tied to the device), *with Bausch*, 630 F.3d at 556 (7th Cir. 2010) (revoking argument that federal violations must be based on device-specific PMA requirements), *and Hughes v. Boston Scientific Corp.*, 631 F.3d 762, 769–71 (5th Cir. 2011) (permitting claims based on violations of general federal obligations, here, the FDA's Medical Device Reporting).

District courts in this Circuit have reflected both sides of that divide. Some courts have rejected claims based on CGMP violations, arguing that such generalized regulations are too open-ended to impose clear, enforceable duties. *See Ilarraza v. Medtronic, Inc.,* 677 F. Supp. 2d 582, 589 (E.D.N.Y. 2009) ("This court is not the first to hold that the general pleading of CGMP violations is insufficient to state a 'plausible' parallel claim not subject to dismissal on the ground of preemption."); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 284 (E.D.N.Y. 2009) (rejecting CGMPs as "too generic, *standing alone*" to serve as a basis for a parallel claim) (emphasis added). Others have allowed such claims when the CGMP violation is tethered to a specific PMA obligation. *See Gelber v. Stryker Corp.,* 788 F. Supp. 2d 145, 155–56 (S.D.N.Y. 2011) [hereinafter *Gelber II*] (allowing a CGMP-based claim where allegations linked the violation to a failure to follow a specific FDA-mandated procedure).

The key distinction is not the reliance on CGMPs, but rather the existence of a particular violation of federal regulations and factual support connecting that violation to the plaintiff's injury. *See Simon*, 990 F. Supp. 2d at 403 (setting forth the standard that plaintiffs must point to a specific federal violation and link that violation to their injuries); *Gelber II*, 788 F. Supp. 2d at 155 (requiring factual allegations linking the alleged federal violation to the plaintiff's injury); *Horowitz*, 613 F. Supp. 2d at 284 (holding that claims are preempted absent "a cognizable link

between the defendant's federal violations and plaintiff's injury"); *Ilarraza*, 677 F. Supp. 2d at 589 (dismissing claims where plaintiff failed to allege "any specific problem, or failure to comply with *any FDA regulation* that can be linked to the injury alleged") (emphasis added). Accordingly, consistent with the prevailing approach in this Circuit, Plaintiff may rely on CGMPs so long as the allegations identify a specific federal obligation and a parallel state-law duty. *See Babayev,* 228 F. Supp. 3d at 214 (collecting cases); *Rosen*, 41 F. Supp. 3d at 181 (permitting CGMP-based claims "so long as they are supported by sufficient factual evidence of the violation and demonstrate a causal connection to the alleged injuries").

"The district courts are in nearly complete agreement, however, on the degree of specificity required to plead a parallel claim." *Id.* at 215. Crucially, pleadings must meet the *Twombly* and *Iqbal* standard that governs the sufficiency of pleadings. "To avoid preemption and satisfy the *Twombly* and *Iqbal* pleading standards, plaintiffs suing with regard to a PMA-approved device cannot simply make the conclusory allegation that a defendant's conduct violated FDA regulations." *Simon*, 990 F. Supp. 2d at 403; *see Babayev*, 228 F. Supp. 3d at 215 (collecting cases). Accordingly, in reconciling the foregoing, to successfully plead a parallel claim, a plaintiff must: identify a state-law duty that is identical to a particular federal requirement; allege a violation of that federal requirement; and present facts plausibly linking that violation to their injuries. *See Gelber II*, 788 F. Supp. 2d at 155 (requiring factual allegations linking federal violation to plaintiff's injury); *Horowitz*, 613 F. Supp. 2d at 284 (holding that claims are preempted absent "a cognizable link between the defendant's federal violations and plaintiff's injury"); *Otis-Wisher,* 616 F. App'x at 434 (reinforcing the Supreme Court's standard that a state-law duty must be "identical" to an existing federal requirement).

### IV. Plaintiff's Negligence and Strict Liability Causes of Action

To the extent that Plaintiff relies on catch-all theories of negligence and strict liability, those claims fail. (*See* Compl. ¶ 22.) Given that these claims are rooted in generalized duties derived from state negligence and strict liability law, allowing them to proceed would directly regulate the device's operation and use, thereby conflicting with federal law. *See Riegel*, 552 U.S. at 328 (finding that general common-law duties are expressly preempted as they directly regulate the device). Considering the Supreme Court's decision in *Riegel*, "claims asserted under New York law for strict liability . . . and negligence in the design, testing, inspection, distribution, labeling, marketing, and sale of a Class III device which receives PMA are preempted by the MDA." *Lake v. Kardjian*, 874 N.Y.S.2d 751, 754 (N.Y. Sup. Ct. 2008) (citing *Riegel*, 552 U.S. at 320–21).

Furthermore, Plaintiff's general allegations are insufficient to evade preemption, as Plaintiff fails to ascertain "identical" state-law duties to support a parallel claim. *See Otis-Wisher*, 616 F. App'x at 434 ("To survive preemption, a claim must be premised on a state-law duty that is 'identical' to the federal requirement."). Specifically, Plaintiff's allegations that Defendants failed to service the decedents' LifeVest and train their staff adequately are insufficient to evade preemption. (Compl. ¶ 22.) Since these claims are rooted in generalized duties derived from state tort law theories of negligence and strict liability, allowing them to proceed would directly regulate the device's operation and use, thereby conflicting with federal law. *See Riegel*, 552 U.S. at 328 (finding that general common-law duties are expressly preempted as they directly regulate the device). As the *Riegel* Court explained, unlike specific obligations such as fire codes, general tort duties "directly regulate" the device and thus conflict with federal law. 552 U.S. at 328–29. Accordingly, because these claims would impose requirements "different from, or in addition to" those approved by the FDA, they are expressly preempted under § 360k(a). *Id.* at 323 (agreeing with *Lohr* that common-law negligence and strict liability claims impose requirements preempted by federal law).

Plaintiff's assertion that Defendants failed to adequately service decedent's LifeVest differs from the other claims because the Plaintiff cites a specific federal obligation. (*See* Opp. at 5.) Specifically, Plaintiff points to a provision in the CGMP, which requires that a manufacturer "establish and maintain procedures for receiving, reviewing, and evaluating complaints." 21 C.F.R. § 820,198(a). These procedures must "ensure that: (1) All complaints are processed in a uniform and timely manner; (2) Oral complaints are documented upon receipt; and (3) Complaints are evaluated to determine whether the complaint represents an event which is required to be reported to [the] FDA . . . ." *Id.*

Plaintiff makes the general allegation that Defendants "failure to document and respond to complaints about [LifeVests] *could* have resulted in a defect persisting in [LifeVests]. (Opp. at 5) (emphasis added). However, such general, speculative allegations are of the kind that fail to meet the *Twombly* and *Iqbal* pleading requirements. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."). Furthermore, Plaintiff does not identify a parallel state-law duty that imposes identical obligations. Without such allegations to support a parallel claim, relying solely on this CGMP amounts to an attempt to enforce federal law, which is impliedly preempted. *See Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246, 252 (E.D.N.Y. 2014) ("Mere failure to comply with FDA provisions does not automatically provide a private litigant with a cause of action; it is the federal government that is authorized to file suit for noncompliance with medical device provisions."); *see generally Buckman*, 531 U.S. 341 (preempting claims that exist "solely by virtue of FDCA [] requirements").

Similarly, Plaintiff's allegations concerning staff training are insufficient to evade preemption without a parallel state law duty that does not impose additional requirements. *See id.* ("To avoid imposing state requirements on a device manufacturer which are in addition to or different from federal requirements, a plaintiff must establish that the state and federal requirements are equivalent."). As the Fifth Circuit explained in *Gomez v. St. Jude Medical Daig Div. Inc.*, 442 F.3d 919, 931 (5th Cir. 2006),

"[t]o permit a jury to decide [plaintiff's] claims that the . . . training material the FDA required and approved through PMA process were inadequate under state law would displace the FDA's exclusive role and expertise in this area and risk imposing inconsistent obligations on [the Defendants]."

Ultimately, those allegations rooted in traditional catch-all tort law seek to impose requirements that either diverge from or supplement federal regulations. *See Gelber II*, 788 F. Supp. 2d at 161 ("Imposing liability on defendants for "fail[ing] to implement effective corrective or preventive actions" or "fail[ing] to timely identify the causes of the device failure" would impose additional state law requirements on defendants."). They cannot, therefore, support a parallel claim in the absence of parallel state law duties.

### A. Design Defect Claim

Plaintiff's design defect claims are expressly preempted under both negligence and strict liability. *See Simon,* 990 F. Supp. 2d at 405 ("Design defect claims regarding a PMA-approved device are squarely preempted by the MDA."); *Colon ex. Rel. Molina v. BIC USA, Inc.,* 199 F. Supp. 2d 53, 83 ("Courts have noted that, for the purposes of analyzing a design defect claim, the theories of strict liability and negligence are virtually identical."). To state a claim for defective design, a plaintiff must allege "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." *Colon ex rel. Molina*, 199 F. Supp. 2d at 83. "[A] defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." *Robinson v. Reed–Prentice Div. of Package Mach. Co.,* 403 N.E.2d 440, 443 (N.Y. 1980) (citing RESTATEMENT (SECOND) OF TORTS § 402A (Am. L. Inst. 1965)). The inquiry in a design defect case "requires a fact finder

to make a judgment about the manufacturer's judgment" in choosing to design a product in a certain way. *Colon ex rel. Molina,* 199 F. Supp. 2d at 83 (quoting *Denny v. Ford Motor Co.,* 662 N.E.2d 730, 735 (N.Y. 1995)).

Considering this standard, which directly challenges the FDA's judgment and thereby imposes different or additional standards, this claim cannot move forward unless the Plaintiff relies on a parallel federal duty. Here, Plaintiff has not alleged any federal violation in support of a parallel claim. Plaintiff does not allege that the Defendants deviated from the FDA-approved design. Plaintiff's claim rests solely on the general premise that LifeVest was unreasonably "dangerous" or "defective." (Compl. ¶¶ 15, 27.) Such claims essentially challenge the FDA's judgment regarding the safety of LifeVest's design, thereby seeking to impose requirements that differ from, or in addition to, those approved by the agency. *See Horowitz,* 613 F. Supp. 2d at 284 ("Defective design claim[s], which challenge[] the FDA's findings concerning the safety of the [medical device's] design, necessarily impose[] requirements that are different from, or in addition to, federal regulations."). Accordingly, Plaintiff's design defect claims based on negligence and strict liability, as asserted, are expressly preempted under § 360k(a). *See Riegel,* 552 U.S. at 325 ("State tort law that requires a manufacturer's [Class III device] to be safer . . . than the model the FDA has approved disrupts the federal scheme."); *Gale,* 989 F. Supp. 2d at 248 ("A plaintiff's state tort claim would be pre-empted if it alleged the device, as approved by the FDA, was unreasonably dangerous.").

## B. Manufacturing Defect Claim

Plaintiff's manufacturing defect claims, brought under theories of negligence and strict liability, likewise fail. Although Plaintiff's claim may implicate a state-law duty that parallels a federal requirement, *see* 21 U.S.C. § 360e(d)(6)(A)(i), the Complaint fails to plead sufficient facts to support a

parallel claim. Consequently, the claim is preempted under § 360k(a) because it seeks to impose state requirements which are in addition to or different from federal requirements." *See Bertini*, 8 F. Supp. 3d at 252 ("To avoid imposing state requirements on a device manufacturer which are in addition to or different from federal requirements, a plaintiff must establish that the state and federal requirements are equivalent.").

"To state a manufacturing defect claim, Plaintiffs must show that the specific [device] was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction, and that the defect was the cause of plaintiff's injury." *Gelber v. Stryker Corp.*, 752 F. Supp. 2d 328, 335 (S.D.N.Y. 2010) [hereinafter *Gelber I*] (citing *Horowitz*, 613 F. Supp. 2d at 283). Here, Plaintiff makes the bald assertion that Defendants "fail[ed] to properly assemble the emergency medical device[.]" (Compl. ¶ 22.) Standing alone, this allegation is insufficient to state a cognizable claim for a manufacturing defect that meets the *Twombly* standard.

In comparison, in *Gelber II,* the Court found an actionable manufacturing defect claim based on allegations that the device was fabricated with "manufacturing residuals." 788 F. Supp. 2d at 155. Similarly, in *Gale,* the Court allowed a manufacturing defect claim where the plaintiff alleged that the defendant "failed to recall a component . . . that was mislabeled with the incorrect size." 989 F. Supp. 2d at 250. Accordingly, without some degree of specificity to supplement the conclusory assertions to raise the claim to plausible and cognizable, Plaintiff's manufacturing defect claim fails. *See Stevens v. Pacesetter, Inc.*, No. 3:07–cv–3812, 2008 WL 2637417, at *1 (D.S.C. Apr. 1, 2008) ("Generic allegations of a manufacturing defect . . . do not [] suggest that the particular alleged failure is a failure to manufacture the device *in accordance with federal standards*.); *Horowitz*, 613 F. Supp. 2d at 282 ("To survive preemption . . . a

15

plaintiff must demonstrate a cognizable link between the defendant's federal violations and plaintiff's injury.").

### C. Failure to Warn Claim

Plaintiff's failure to warn theory fails because he fails to allege a parallel claim that evades preemption. Specifically, Plaintiff alleges that Defendants failed to provide "necessary alerts and warnings of malfunction" and "properly label the device." (Compl. ¶ 22.) Plaintiff, however, does not identify a specific federal duty that Defendants allegedly violated. In the absence of a parallel claim grounded in both a federal obligation and an "identical" state-law duty, Plaintiff's failure-to-warn claim cannot survive. *Otis-Wisher,* 616 F. App'x at 434.

"The FDA's PMA approval includes specific language for Class III device labels and warnings." *In re Medtronic Inc.,* 623 F.3d at 1205. Here, Plaintiff does not allege that Defendants diverted from federal standards. Therefore, he fails to plead a federal violation in support of a parallel claim. Moreover, claims that an FDA-approved labeling was inadequate are expressly preempted, as they seek to impose obligations that diverge from federal regulations. *See Riegel*, 552 U.S at 329 ("The MDA would pre-empt a jury determination that the FDA-approved labeling for a [medical device] violated a state common-law requirement for additional warnings.").

Without a parallel claim to evade preemption, Plaintiff's claim seeks to impose state-law duties not grounded in federal obligations. *See Bertini*, 8 F. Supp. 3d at 252 ("To avoid imposing state requirements on a device manufacturer which are in addition to or different from federal requirements, a plaintiff must establish that the state and federal requirements are equivalent."). Therefore, Plaintiff's failure-to-warn claim is preempted pursuant to § 360k(a).

V.      **Warranty Claims**

Plaintiff's third cause of action is premised on the breach of express and implied warranties. (*See* Compl. ¶¶ 35–40.) Specifically, Plaintiff alleges that Defendants made express/implied warranties that LifeVest was "designed and manufactured free from defects and reasonably safe for foreseeable uses" (*Id.* ¶ 36), and they breached those warranties by "designing and/or manufacturing and/or distributing and/or selling an emergency device that was not reasonable safe for foreseeable uses." (*Id.* ¶ 37.) These claims both fail for the following reasons.

The implied warranty claim is expressly preempted. To establish a breach of implied warranty under New York law, Plaintiff must show that the LifeVest was not "reasonably fit for the ordinary purpose for which it was intended." *Denny*, 662 N.E.2d at 732. That inquiry would require a jury to find that an FDA-approved medical device was unfit for its intended purpose, which would directly contravene the FDA's judgment. *See In re Medtronic, Inc.*, 592 F. Supp. 2d 1147, 1164 (D. Minn. 2009). Therefore, it is expressly preempted as it seeks to impose additional requirements beyond those mandated by federal oversight. *See Riegel* 552 U.S. at 320–321 (affirming that New York law implied warranty claims are expressly preempted).

The express warranty claim is likewise deficient. To avoid preemption, an express warranty claim must be based on specific representations made by the manufacturer that exceed those approved by the FDA. *Lake*, 874 N.Y.S.2d at 754. Plaintiff makes no such allegations here. Without such allegations, Plaintiff's express warranty claim fails. *See Gale*, 989 F. Supp. 2d at 251 ("To the extent Plaintiff asserts breach of express warranty, such a claim is also preempted absent allegations that Defendants made voluntary representations beyond what the FDA approved."); *Lake,* 874 N.Y.S.2d at 754 (finding that "a breach of express warranty claim based upon FDA approved statements . . . is preempted by the MDA, because such a claim would impose requirements different from, or in addition to, the federal

17

requirements, potentially resulting in the imposition of liability on a manufacturer who has fully complied with federal law").

## VI. Pecuniary Losses to the Estate

Plaintiff's fourth cause of action seeks recovery for pecuniary losses to the estate. (Compl. ¶ 41–43.)  As an initial matter, Plaintiff did not respond to Defendants' arguments that this cause of action should be dismissed. Courts routinely deem claims abandoned where a plaintiff fails to address a defendant's arguments in opposition. *See Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212, 227 (S.D.N.Y. 2022); *Gonzalez v. City of New York*, 442 F. Supp. 3d 665, 684 (S.D.N.Y. 2020) ("[Plaintiff] abandoned these claims because he did not address Defendants' arguments for summary judgment in his opposition."), *aff'd*, 845 F. App'x 11 (2d Cir. 2021) (summary order). Accordingly, the Court finds that Plaintiff has abandoned his pecuniary losses claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint pursuant to FRCP 12(b)(6) is GRANTED. Plaintiff's claims are dismissed without prejudice. Plaintiff is granted leave to file an Amended Complaint by September 15, 2025. Plaintiff is advised that the Amended Complaint will replace, not supplement, the Complaint, and so any claims that he may wish to pursue must be included in, or attached to, the Amended Complaint. Should Plaintiff file an Amended Complaint, the Defendants are directed to answer or otherwise respond by October 15, 2025. If Plaintiff fails to file an Amended Complaint within the time allowed, those claims that were dismissed without prejudice will be deemed dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 29.

SO ORDERED.

Dated: August 11, 2025
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge